JOHN M. CARTER, APPELLANT, V. BENJAMIN A. GIBSON, APPELLEE.

FILED MARCH 18, 1896.   No. 6283.

Judgment Foreign to Issues: REVERSAL: PLEADING. A judgment foreign to the issues joined and for which there was no prayer by the party in whose favor it was rendered, must, upon appeal, be reversed in the supreme court.

APPEAL from the district court of Cass county. Heard below before CHAPMAN, J.

*H. D. Travis* and *A. M. Russell,* for appellant.

*Wooley & Gibson, contra.*

RYAN, C.

The issues presented in this case were fully described in *Carter v. Gibson,* 29 Neb., 324. After the case had been remanded there was a trial in the district court, and upon findings of fact there was a decree, which plaintiff seeks to review by this his appeal.

The action was brought by John M. Carter, as *cestui que trust,* against Benjamin A. Gibson, as

trustee, to compel an accounting by the latter with respect to lands by the *cestui que trust* entrusted to the trustee to sell for the payment of certain enumerated debts owing by Carter to different parties, among whom was B. A. Gibson. The prayer of plaintiff's petition was for an accounting of the moneys, notes, and securities received by B. A. Gibson in consideration of the sale of any of said land, with interest thereon; that said Gibson be required to account for the actual value of such land as had been sold to Francis N. Gibson; that of the proceeds of the sales made by him, B. A. Gibson be required to apply on the indebtedness of Carter a sufficient amount to extinguish it; that B. A. Gibson be required to pay the balance of such proceeds to plaintiff and cancel the liens named in the contract between plaintiff and defendant; that B. A. Gibson be enjoined from disposing of any more of said land; "that he may do all things as agreed, and that plaintiff may have such other and further relief as justice and equity may require." By his answer, B. A. Gibson described the particular debts with respect to the payment of which Carter had caused to be conveyed the real property in trust, and described various transactions which he alleged entitled him to credits on such amounts as he had realized from sales of portions of said land, and finally denied that defendant was in any manner liable to account to plaintiff under the agreement set forth in plaintiff's petition, or under any other agreement, for any lots or land sold by defendant. Following this averment there was this prayer: "Hence the defendant asks that the plaintiff's bill filed in this action be dismissed at his costs, and that this defendant may be accorded such further

relief as may be just and equitable." There was a reply, which requires no special notice in this connection.

The portion of the decree from which specially Carter prosecutes this appeal was in the following language: "It is hereby ordered, adjudged, and decreed that there is due the defendant Gibson from the plaintiff John M. Carter the sum of $3,754.21, which is made a lien on the lands hereinafter described." In connection with the facts pursuant to which the above figures were reached there was filed a paper of which the heading was "Computation by the Court." The first item of this computation was a charge of "Carter's indebtedness," drawing interest at ten per cent per annum, $2,658.73. The next item was interest thereon to August 1, 1887, $22.15, making a total of $2,680.88. From this were deducted proceeds of sales, $1,581.95, leaving a balance of $1,098.93. There were then alternate additions of interest and credits of sales until the balance due was $127.43 on December 1, 1887. To the amount last named there was added "indebtedness of note due F. N. Gibson, principal and interest at nine per cent to December 1, 1887, $1,981.75." The sum of $127.43 and the sum of $1,981.75 were added together and upon this total there were credited "proceeds of sales for November, 1887, $212.95." By reason of interest accrued and credits for sales this amount was reduced to $145.88 on May 1, 1888. This balance, to constitute a new principal, was added to $5,914.52, described as "amount due on claim Connecticut River Savings Bank, July 1, 1887." To this was added interest on the last named amount to May 1, 1888, $443.50. The grand total thus made up was then credited

46

with sales to May 1, 1888, $1,050, and thereafter were additions of accruing interest and reductions by amount of sales alternately, until on December 15, 1892, there still remained a balance of $3,209.21. To this was added the commission allowed the trustee for his services, of the sum of $545. In this way there was ascertained, as expressed in the above mentioned computation, the "Total amount due, which is a lien on the real estate held by the trustee, $3,754.21." It has already been stated that by the court it was "ordered, adjudged, and decreed that there is due the defendant Gibson from the plaintiff John M. Carter the sum of $3,754.21." This was, in terms, made a lien on the lands in the aforesaid decree described as still remaining unsold. As the finding of facts was referred to in the judgment entry as constituting a part thereof, there is no impropriety in making reference to it for the purpose of rendering clear the matters hereinafter to be discussed.

From the brief description of the pleadings hereinbefore given it is very clear that there was no prayer for judgment against Mr. Carter. In his answer B. A. Gibson alleged that there was due from Carter to the Connecticut River Savings Bank about $4,200, and to Francis N. Gibson about $1,700, and to B. A. Gibson himself about $3,800. The computation by the court above referred to took up each of these three items in the inverse order of their being named herein and first extinguished the claim due B. A. Gibson, then likewise treated that of F. N. Gibson. To the claim of the savings bank, of $5,914.52, due July 1, 1887, was added interest thereon till May 1, 1888, and the sum of these two items was added to

the balance of $145.88 still unpaid to F. N. Gibson, and the grand total, with interest on it up to December 15, 1892, was reduced to $3,209.21. This last balance was by the computation recognized as being due to the Connecticut River Savings Bank.    B. A. Gibson, so far as the record shows, had nothing to do with it except that he held as trustee certain real property to be by him sold, and with the proceeds of which sales he was by contract charged with the duty of making payments to said savings bank.    The contract by virtue of which he became such trustee was made between himself and John M. Carter.    The privity was between Gibson and Carter; there was none between Gibson and the savings bank.    It was therefore erroneous to render a judgment in favor of B. A. Gibson against Mr. Carter.    Even if there had been such a relation between B. A. Gibson and John M. Carter that the former might be entitled to relief against the latter, such relief could not be granted upon the issues actually joined, for such relief was not therein sought.    The action was brought by Carter to compel Gibson to account as trustee.    It resulted in a judgment in favor of the latter against the former for an amount by all parties confessedly due to a bank which was not a party to the action.    It is not necessary to review the processes, step by step, by which the court reached the conclusion that there was due from Carter to Gibson the exact amount stated in its decree, for, as we have already clearly shown, whatever this balance was, it was due a bank not a party to this action, and the decree entered was foreign to the issues presented for determination.    Whether or not the amount allowed for the services of B. A. Gibson

can be created a lien upon the lands entrusted to him for sale will not be determined in this action. Such real property as remained unsold at the time the judgment appealed from was rendered, and has not since been properly disposed of, should be required to be sold in such manner as shall be deemed by the court to be advisable, and thereupon a final accounting should be had between the parties to this action. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.